

# IN THE
# Court of Appeals of Indiana

Tim Kinder,

*Appellant-Respondent*

v.

Elena Kinder,

*Appellee-Petitioner*

FILED

Jul 03 2025, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 3, 2025

Court of Appeals Case No.
24A-DN-1079

Appeal from the Monroe Circuit Court

The Honorable Emily Salzmann, Judge

Trial Court Cause No.
53C08-2302-DN-51

**Opinion by Judge May**
Judges Tavitas and DeBoer concur.

**May, Judge.**

[1] Tim Kinder ("Husband") appeals the trial court's order dissolving his marriage to Elena Kinder ("Wife"). Husband presents several issues, which we reorganize and restate as:

> (1) Whether the trial court erred as a matter of law by individually considering how to divide some assets;

> (2) Whether the trial court's final order contains internal inconsistencies that render it an abuse of discretion; and

> (3) Whether the trial court's multiple mathematical errors render its final order an abuse of discretion.

While the trial court could consider assets individually, the internal inconsistencies and numerous mathematical errors render its final order an abuse of discretion. After explaining the trial court's errors, we reverse and remand for the trial court to issue a new order.

## Facts and Procedural History

[2] Husband and Wife married on October 7, 2017, and Wife filed for dissolution on February 7, 2023. There were no children born of the marriage. During the marriage, Wife initially was employed by IU Health and then opened her own massage and bra business. Husband was employed by the Martin County Alliance for Economic Development until he left that position "about two years" into the marriage to pursue a master's degree in business administration. (Tr. Vol. II at 8.)

[3]     On October 26, 2023, the trial court held a final hearing on Wife's petition for dissolution. During that hearing, the parties presented evidence and testimony regarding all assets and debts of the marital estate.

[4]     In its final order, the trial court used the statutory factors in Indiana Code section 31-15-7-5 for determining whether the presumption of equal division had been rebutted to determine individually how to divide eight specific assets – the marital residence, a property in Greene County, a pontoon boat, a boat slip, a Jeep Wrangler, a GMC Sierra, a Honda motorcycle, and Husband's Thrift Savings Plan account. The court awarded possession of the marital residence to Wife but determined Husband should receive 28% of the value of the residence. The trial court awarded Husband possession of the pontoon boat but determined Wife should receive 40% of its value. The trial court awarded Wife possession of the Jeep Wrangler but determined Husband should be awarded 50% of the Jeep's value. The trial court set aside 100% of the value of the boat slip and GMC Sierra to Husband and 100% of the value of the Honda motorcycle and the Greene County property to Wife. The trial court also determined Husband should receive 100% of the Thrift Savings Plan that Husband had acquired between separation and dissolution.

[5]     Regarding the distribution of the parties' other retirement accounts, the trial court found:

> Both parties had substantial balances in retirement accounts prior to marriage. This Court finds that the most appropriate way to address these prior balances would be with a coverture fraction.

However, despite the fact that the Parties provided the balances of the accounts prior to marriage, this Court does not have the initial investment dates for all of the accounts that were rolled over. Therefore, the Court does not have sufficient information to apply a coverture fraction. The Parties retirement accounts will be included in the overall division of the marital estate.

(App. Vol. II at 27.) The trial court therefore included the full balances of those retirement accounts at the time of dissolution in the divisible marital estate. As an attempt to reach its desired division of the marital estate, the trial court ordered Husband to pay Wife an equalization payment of $75,581.57.

[6] Husband filed a motion to correct error on February 28, 2024, that challenged a number of the trial court's findings of fact, conclusions of law, and calculations on the worksheet dividing the marital estate and asked the trial court to reconsider its division of certain assets and its calculation of the equalization payment owed by Husband. Wife filed a response that asked the trial court to deny Husband's motion to correct error. The trial court did not rule on Husband's motion to correct error, and it was deemed denied after forty-five days pursuant to Indiana Trial Rule 53.3.

## Discussion and Decision

[7] Husband appeals following the denial of his motion to correct error. We review the denial of a motion to correct error for an abuse of discretion, which occurs "when the trial court's decision is against the logic and effect of the facts and circumstances before the court or if the court has misinterpreted the law." *Ind. Bureau of Motor Vehicles v. Watson*, 70 N.E.3d 380, 384 (Ind. Ct. App. 2017)

(internal citations omitted). If the motion raised questions of law, we review those issues de novo. *Id.*

[8] We also review a trial court's division of marital assets for an abuse of discretion. *Roetter v. Roetter*, 182 N.E.3d 221, 225 (Ind. 2022). "A trial court abuses its discretion if its decision stands clearly against the logic and effect of the facts or reasonable inferences, if it misinterprets the law, or if it overlooks evidence of applicable statutory factors." *Id.* "The party challenging the 'trial court's division of marital property must overcome a strong presumption that the court considered and complied with the applicable statute.'" *Id.* (quoting *Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008)). "[W]e focus on what the trial court did and not what it could have done." *Alifimoff v. Stuart*, 192 N.E.3d 987, 998 (Ind. Ct. App. 2022), *trans. denied*. We do not reweigh the evidence or judge the credibility of the witnesses, and we consider the evidence in the light most favorable to the trial court's decision. *Id.*

[9] In dissolution proceedings, the division of property is a two-step process. *Smith v. Smith*, 136 N.E.3d 275, 281 (Ind. Ct. App. 2019). "First, the trial court must ascertain what property to include in the marital estate; second, the trial court must fashion a just and reasonable division of the marital estate." *Id.* The marital estate includes all property (1) owned by either spouse prior to the marriage, (2) acquired by either spouse in his or her own right after the marriage, and before final separation of the parties, or (3) acquired by the joint efforts of the spouses. Ind. Code § 31-15-7-4. Then, when dividing the marital estate, the trial court is to

presume that an equal division of the marital property between the parties is just and reasonable. However, this presumption may be rebutted by a party who presents relevant evidence, including evidence concerning the following factors, that an equal division would not be just and reasonable:

(1) The contribution of each spouse to the acquisition of the property, regardless of whether the contribution was income producing.

(2) The extent to which the property was acquired by each spouse:

     (A) before the marriage; or

     (B) through inheritance or gift.

(3) The economic circumstances of each spouse at the time the dissolution of the property is to become effective, including the desirability of awarding the family residence or the right to dwell in the family residence for such periods as the court considers just to the spouse having custody of any children.

(4) The conduct of the parties during the marriage as related to the disposition or dissipation of their property.

(5) The earnings or earning ability of the parties as related to:

     (A) a final division of property; and

     (B) a final determination of the property rights of the parties.

Ind. Code § 31-15-7-5.

## 1. Consideration of individual items

[10]    Husband first asserts the trial court could not consider how to dispose of some assets individually. For example, as mentioned above, the trial court utilized

the factors in Indiana Code section 31-15-7-5 to determine the proper disposition of the value of each of the following items: the marital residence, a property in Greene County, a Jeep Wrangler, a Honda motorcycle, a boat slip, a pontoon boat, a GMC Sierra, and Husband's Thrift Savings Plan. Husband argues that application of the statutory factors to individual assets was erroneous, and in support he cites *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002), for the proposition that "[a] disposition is to be considered as a whole, not item by item." (Br. of Appellant at 20.)

[11] Husband is correct that *Fobar* contains that language, but he asks us to apply it in an improper context. *Fobar* was discussing the standard by which an appellate court is to review a trial court's exercise of its discretion, *see Fobar*, 771 N.E.2d at 58-60, and indicated that the appellate court was not to consider the trial court's disposition item by item. *Fobar* said nothing about whether a trial court could consider the factors in Indiana Code section 31-15-7-5 to determine how to dispose of individual assets.

[12] Moreover, our Indiana Supreme Court's decision in *Roetter*, 182 N.E.3d 221, suggests the trial court herein could determine what to do with individual assets. There, our Indiana Supreme Court found no abuse of discretion in a trial court's distribution of assets between divorcing parties when that trial court set aside some assets and liabilities to each party, calculated the "remaining divisible marital pot[,]" and divided that pot 55% to Wife and 45% to Husband. *Id*. at 224. In the process, the Court said: "The better approach, we believe, would have been for the trial court to include all assets and liabilities in the

divisible marital pot, rather than setting aside those assets and liabilities at issue before dividing the estate." *Id*. at 229. Nevertheless, because "the trial court expressly considered all property in the marital estate[,] *id*., and "offer[ed] sufficient findings to rebut the presumptive equal division," *id*., the trial court had not abused its discretion. In closing, Justice Goff wrote:

> So long as it expressly considers all assets and liabilities, and so long as it offers sufficient findings to rebut the presumptive equal division, a trial court need not follow a rigid, technical formula in dividing the marital estate and we will assume that it applied the law correctly.

*Id*.

[13] If a trial court may set aside 100% of an individual asset or liability to one party or another before dividing the remainder of the marital pot, then by logical extension, a trial court could also set aside 60% or 40% of an asset, "so long as it offers sufficient findings to rebut the presumptive equal division[.]" *Id*. Here, the trial court did just that. It provided detailed findings based on the factors in Indiana Code section 31-15-7-5 for why and how it was dividing some assets outside the remaining divisible marital pot as part of its attempt to fashion a just and equitable division of the marital estate. While trial courts certainly are not required to undergo all of these individual divisions, and while the "better approach" would be to include all assets in the divisible pot and conduct one analysis of the statutory factors, *id*., we follow *Roetter* and hold the trial court had the authority to divide this marital estate by considering some assets individually.

## 2. Internal inconsistencies in order

[14] While the trial court had the authority to consider some assets individually, the trial court's application of its methodology to the facts herein resulted in an abuse of discretion that requires reversal of the trial court's order. This abuse of discretion occurred because the trial court did not follow through on dividing the marital estate in the manner that it determined was just and reasonable and, instead, attached three balance sheets that do not reflect the trial court's determination of how the estate should be divided.

[15] In Paragraph 33 of its order, the trial court indicated it was going to "analyze the factors under I.C. 31-15-7-5 for both individual assets due to inheritance or acquisition prior to the marriage, as well as for the overall division of the marital estate." (Appellant's App. Vol. 2 at 25.) For the individual assets, the trial court provided a detailed analysis of the statutory factors and then determined Wife would get the marital residence and Husband would get 28% of its value; Husband would get the pontoon boat and Wife would get 40% of its value; Wife would get the Jeep and Husband would get 50% of its value; Huband would get 100% of the boat slip, GMC Sierra, and Thrift Savings Plan account; and Wife would get 100% of the Honda motorcycle and the Greene County property. Then, after another analysis of the statutory factors, the trial court indicated: "The presumption of an equal overall division of the marital estate has been rebutted. The marital estate, other than the specific assets discussed above, shall be divided with 55% awarded to Wife and 45% awarded to Husband." (*Id.* at 28.)

[16]    In Paragraph 34 of its order, entitled "Marital Balance Sheet", the trial court provided:

> a.  All values and awards will be reflected in the attached Marital Balance Sheet.
>
> b. Given the differences in the division of several marital assets, this Court analyzed the property equalization payment in three ways:
>
>> i. With specific assets for which the Court found the presumption of equal division to be rebutted removed from the marital balance sheet and an equal division of the marital estate, Husband would owe Wife and equalization payment of $75, 581.57 (Exhibit A)
>>
>> ii. With the specific assets for which the Court found the presumption of equal division to be rebutted included in the marital balance sheet and 55% awarded to Wife and 45% awarded to Husband, Husband would owe Wife a property equalization payment of $72, 131.27. (Exhibit B)
>>
>> iii. With the specific assets for which the Court found the presumption of equal division to be rebutted included in the marital balance sheet and an equal division of the marital estate, and accounting for an equalization payment of $75,581.57 paid by Husband to Wife, the division of the marital estate is approximately 55% to Wife and 45% to Husband.  (Exhibit C)

(*Id*. at 28-29.)

[17]    Setting aside for a moment the fact that the trial court's calculations are all incorrect due to the mathematical errors discussed in more detail below, the trial court abused its discretion because none of the three spreadsheets actually

divided the marital estate in the manner that the trial court determined in Paragraph 33 would be just and reasonable. The first spreadsheet properly excluded the individually divided assets, but it divided the remaining estate equally between the parties. The second spreadsheet divided the assets 55%/45%, but included the individually divided assets. The third spreadsheet included the individually divided assets and divided the estate equally. Thus, none of the trial court's spreadsheets excluded the eight assets considered individually and then divided the remaining estate with 55% to Wife and 45% to Husband. Because of this inconsistency between the trial court's determination in Paragraph 33 and its spreadsheets in Paragraph 34, we do not know if the trial court was trying to divide the entire marital estate 55% to 45% or only the remaining marital estate, "other than the specific assets discussed above[.]" (*Id.* at 28.) These internal inconsistencies in the trial court's final order constitute an abuse of discretion because neither we nor the parties can understand what the trial court was attempting to do.

## 3. Mathematical errors

[18] As Husband also notes in his brief, the trial court committed multiple mathematical errors that require us to remand for the trial court to enter a new order.

### 2.1. Coverture fraction misunderstanding

[19] In Paragraph 33(j) of its final order, the trial court indicated:

Both Parties had substantial balances in retirement accounts prior to marriage. This Court finds that the most appropriate way to address these prior balances would be with a coverture fraction. However, despite the fact that the Parties provided balances of the accounts prior to marriage, this Court does not have the initial investment dates for all of the accounts that were rolled over. Therefore, the Court does not have sufficient information to apply a coverture fraction. The Parties['] retirement accounts will be included in the overall division of the marital estate.

(App. Vol. II at 27.) Husband argues the trial court erred by indicating a coverture fraction was required to determine how much of the parties' retirement accounts accrued before and/or during the marriage. We agree.

[20] A coverture fraction is a mathematical formula that can be used to help trial courts determine how to divide an asset during divorce proceedings based on the portion of the asset that accrued during the marriage. *Gatton v. Gatton*, 249 N.E.3d 626, 637 (Ind. Ct. App. 2024). In the coverture fraction, the numerator is "the period during which the marriage existed (while [the asset was] accruing) and the denominator is the total period of time during which [the asset] accrued." *Marriage of Preston*, 704 N.E.2d 1093, 1098 n.6 (Ind. Ct. App. 1999). Herein, as the trial court correctly noted, it could not perform coverture fracture calculations for some of the retirement accounts because it did not have the origin dates of the accounts.

[21] Nevertheless, as Husband argues, a coverture fraction is not the only way to divide retirement account balances into pre-marital and marital portions. When, as herein, the parties provided evidence of the values of the retirement

accounts at the time of marriage, there is no need to apply a coverture fraction. Instead, the trial court can subtract the premarital balance from the balance at dissolution to determine the amount of the account that accrued during the marriage. As Finding 33(j) suggested the court wished to consider the pre-marital balances in its division of assets, its determination that it could not do so mathematically was clear error.[1] If the court wishes to divide these assets differently on remand, the court may exercise its broad discretion to do so, provided it enters the findings to support its division. *Roetter*, 182 N.E.3d at 229.

## 2.2. Spreadsheet entry errors

[22] The trial court determined in Paragraph 33 of its final order that eight assets should be divided between the parties outside the remaining divisible marital pot. For five of those assets, the asset itself and 100% of its value were assigned to one party – Wife received the Greene County property and the Honda motorcycle, while Husband received the boat slip, the GMC Sierra, and the Thrift Saving Plan account. For those five assets the trial court properly indicated on a spreadsheet that the full value of the asset was assigned to the party who received the asset.

---

[1] Our holding that the trial court's statement was mathematically incorrect should **not** be read to indicate the trial court abused its discretion by keeping the full balances of nearly all of the retirement accounts in the marital pot to be divided between the parties, as such a reading would violate our Indiana Supreme Court's holding in *Roetter*. *See Roetter*, 182 N.E.3d at 229 ("The better approach, we believe, would have been for the trial court to include all assets and liabilities in the divisible marital pot, rather than setting aside those assets and liabilities at issue before dividing the estate.").

[23]     However, for the other three assets – the marital residence, the pontoon boat, and the Jeep Wrangler – the trial court assigned the asset to one party and divided the value of the asset between the parties. When the trial court entered the values for those three assets onto the spreadsheets, the trial court's entries were incorrect and these errors caused a miscalculation of the equalization payment that constitutes an abuse of discretion.

[24]     For example, the trial court determined the value of the marital residence was $314,000, (App. Vol. II at 17), and that "the marital residence . . . will be the sole property of Wife[.]" (*Id*. at 29.) However, in paragraph 33(e) of its order, the trial court determined, based on the factors in Indiana Code section 31-15-7-5, that the "presumption for equal division of this asset has been rebutted." (*Id*. at 25.) Rather than a 50/50 division, "the marital residence shall be divided 72% to Wife and 28% to Husband." (*Id*. at 26.) Then, when the trial court listed the marital residence on the spreadsheets, the trial court awarded "$226,080.00" to Wife and "$87,920.00" to Husband. (*Id*. at 33, 34.) Those spreadsheet entries are incorrect. Wife received the whole house, so she received $314,000, and that is the amount that should be indicated in her column on the spreadsheet. Husband received nothing and was owed 28% of the value, or $87,920. Accordingly, the entry on Husband's side of the spreadsheet should have been "-$87,920" to reflect that he was still owed his portion of the value in the house.

[25]     The trial court repeated this spreadsheet entry error with its entries for the Jeep Wrangler and the pontoon boat. The court assigned $5,747 – half of the value

of the Jeep – to each Husband and Wife, but it gave the Jeep itself to Wife, which means Wife's entry should have been the full value of $11,494, and Husband's should have been "-$5,747" to reflect that Husband was still owed his portion of the value. The court assigned the pontoon boat to Husband but assigned 40% of its value to Wife, which means the entry for Husband should have been $5,565 and the entry for Wife should have been "-$2,226".

[26] These erroneous entries resulted in the trial court overestimating the amount Husband received by $82,173 and underestimating the amount Wife received by that same amount, which is greater than the "equalization payment" of $75,581.57 that Husband was ordered to pay. We cannot correct the trial court's mathematical miscalculations and correct its order because the internal inconsistencies noted above leave us unsure what division the trial court was trying to effectuate. We accordingly reverse and remand for the trial court to enter a new order that is supported by its findings and an accurate spreadsheet.

## Conclusion

[27] While the trial court acted within its broad discretion by determining the division of some assets individually, it entered an internally inconsistent order and committed several mathematical errors in its division of the marital estate. We accordingly reverse and remand for recalculation of the division of the estate in a manner not inconsistent with this opinion.

[28] Reversed and remanded.

Tavitas, J., and DeBoer, J., concur.


ATTORNEY FOR APPELLANT

Kendra Gjerdingen
Mallor Grodner LLP
Bloomington, Indiana


ATTORNEY FOR APPELLEE

Glen E. Koch II
Boren, Oliver, & Coffey, LLP
Martinsville, Indiana