**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Aug 14 2013, 5:32 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANT:

**JASON P. HOPPER**
**ERIK H. CARTER**
Cordell & Cordell, P.C.
Noblesville, Indiana

ATTORNEY FOR APPELLEE:

**SERGEY GRECHUKHIN**
Kirtley, Taylor, Sims, Chadd & Minnette,
P.C.
Lebanon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| JAMES TICEN, | ) | |
| | ) | |
| Appellant-Respondent, | ) | |
| | ) | |
| vs. | ) | No. 06A01-1212-DR-564 |
| | ) | |
| VICKI TICEN, | ) | |
| | ) | |
| Appellee-Petitioner. | ) | |

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-1108-DR-413

**August 14, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**SHARPNACK, Senior Judge**

## STATEMENT OF THE CASE

James Ticen appeals the trial court's division of assets in the dissolution of his marriage to Vicki Ticen. We affirm.

## ISSUES

James presents one issue for our review, which we restate as two:

I.      Whether the trial court abused its discretion in awarding Vicki 50% of the appreciation in value of the farm land.

II.     Whether the trial court erred by ordering James to pay Vicki an equalization payment of $150,000.

## FACTS AND PROCEDURAL HISTORY

The parties were married on October 15, 1983, and they separated on August 8, 2011. As there were no children born of the marriage, the only issue before the trial court at the final hearing was the division of the marital assets. Following the hearing, the trial court issued findings of fact and conclusions of law and awarded 65% of the marital property to James and 35% to Vicki. In doing so, the trial court awarded to James farm land that he had acquired during the marriage with funds he received from his mother's estate. Although the trial court awarded the farm land to James, it awarded Vicki 50% of the appreciation in the value of the farm land and ordered James to pay Vicki $150,000 over time as an equalization payment. It is from this order that James now appeals.

## DISCUSSION AND DECISION

Upon review, the trial court's division of marital property is subject to an abuse of discretion standard. *Fobar v. Vonderahe*, 771 N.E.2d 57, 59 (Ind. 2002). When the trial

2

court enters findings, the findings or judgment are not to be set aside unless clearly erroneous. *Yoon v. Yoon*, 711 N.E.2d 1265, 1268 (Ind. 1999). Stated another way, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. *Id.* We do not reweigh the evidence; rather, we consider the evidence most favorable to the judgment with all reasonable inferences drawn in favor of the judgment. *Id.*

## I. PROPERTY DIVISION

James contends that the trial court erred in its division of the marital property. Particularly, James asserts that the trial court erred by giving Vicki 50% of the appreciation in the value of the farm land.

Indiana Code section 31-15-7-5 (1997) mandates that the court presumes an equal division of the marital property unless this presumption is rebutted by evidence that an equal division would not be just and reasonable. Here, the trial court found that James rebutted the presumption of an equal division and determined that a just and reasonable division of the parties' marital estate is 65% to James and 35% to Vicki. Although the court awarded him 65% of the marital estate, James argues that the trial court abused its discretion by awarding to Vicki 50% of the appreciation in value of the farm land.

James asserts that Vicki should not be awarded any portion of the appreciation in value of the farm land, and cites to the trial court's findings and conclusions in support of his contention. The trial court found that Vicki made no contribution to the acquisition of the farm land. Appellant's App. pp. 9, 10 (Finding 18(d), (i)). James paid for the farm

land with his inheritance from his mother's estate by making a large down payment using his inheritance money and then securing a mortgage for the balance due. He paid off the mortgage using further inheritance disbursements and rental proceeds from the rental of the farm land. *Id.* at 10 (Finding 18 (e), (f), (g), (h)). Vicki did not contribute to the negotiation of the rental agreements for the farm land, and rent from the rental agreements was deposited directly into an account maintained solely by James. *Id.* (Finding 18 (j), (k), (l)). James purchased the farm land for a total of $320,349.88, *id.* (Finding 18(f)), and the parties agreed that at the time of separation the farm land was worth $619,500.00. *Id.* at 7-8 (para. 10(b), (c)). The court determined that the $300,000.00 appreciation in the value of the farm land was a "passive windfall" because neither party contributed to it. *Id.* at 10 (Finding 18(m)). In addition, the trial court found that Vicki stands in a superior economic position and that James' only income is his Alcoa pension and farm rental proceeds. *Id.* at 11-12, 13 (Findings 20, 22).

Based upon these findings, James suggests that this case is similar to *Doyle v. Doyle*, 756 N.E.2d 576 (Ind. Ct. App. 2001), such that Vicki should receive none of the appreciation in the value of the farm land; however, *Doyle* is distinguishable from the case at hand. In *Doyle*, the wife appealed the trial court's division of property arguing that the trial court abused its discretion by setting over to the husband 50% of the appreciation in value of the wife's investment accounts. The wife based her argument on the fact that eleven years prior to the marriage she was involved in a serious accident that caused injuries for which she received a settlement. The wife opened investment

4

accounts with the settlement money, and she left the funds untouched. The evidence at the hearing showed that the wife acquired the accounts eleven years prior to her four-year marriage to her husband, the accounts were titled and maintained solely in the wife's name, the funds were never commingled with any other assets, the funds were earmarked for the wife's future medical expenses as a result of her injuries, and no marital funds were contributed to the accounts. On appeal, this Court determined that "[t]he character and sequestration of the personal injury settlement funds at issue present 'unique circumstances' which clearly fall within the criteria set forth in Indiana Code § 31-15-7-5." *Id.* at 580. Therefore, the funds and their appreciation were awarded exclusively to the wife and were not used to reduce the amount of marital property to which she was otherwise entitled.

Here, there exist no such "unique circumstances." James acquired the farm land during his 28-year marriage to Vicki. Moreover, although James receives rental income from the farm land which supplements his monthly pension benefit, there was neither evidence at the hearing nor findings by the trial court that the farm land was earmarked for James' retirement. Rather, the evidence shows that the farm land had been in James' family for several generations and although James does not farm, the land had personal and sentimental value to him. The trial court took all of this into consideration in setting over the farm land to James. Absent unique circumstances like those present in *Doyle* and in order to accomplish a 65/35 division of the parties' assets, it was not improper for the court to divide the appreciation in the value of the farm land. Even in situations

5

where the assets at issue are premarital assets, this Court has determined that the appreciation occurring during the marriage is a divisible marital asset. *See Wanner v. Hutchcroft*, 888 N.E.2d 260, 263 (Ind. Ct. App. 2008) (observing that even where trial court properly sets aside value of premarital assets to one spouse, appreciation of assets over course of marriage is divisible marital asset). The trial court did not abuse its discretion in giving Vicki 50% of the appreciation in the value of the farm land.

## II. EQUALIZATION PAYMENT

James also asserts that the trial court erred by ordering him to pay Vicki an equalization payment of $150,000. He claims that the court's order results in his monthly farm rental income being consumed by the monthly payment to Vicki, which he argues contradicts several of the court's findings.

The trial court made extensive findings concerning each factor contained in Indiana Code section 31-15-7-5 and issued a detailed, well-reasoned, and thoughtful order. The court found that James retired in 2009, and his income at the time of the final hearing was $390.82 per week from his pension and $292.50 per week from farm rental income. Appellant's App. p. 12 (Finding 20(a), (c)). The court also found that James' weekly income is dependent upon his keeping possession of the farm land; if ordered to sell the farm land, James would be left with only his pension income. *Id.* at 13 (Finding 22(a)). In addition, the court found that if James were forced to sell the farm land or to obtain a mortgage on the farm land, his monthly expenses would exceed his monthly income. *Id.* (Finding 22(b)). After carefully considering all of the factors, the court

6

awarded James 65% of the marital estate. In ordering James to pay the equalization payment, the court acknowledged that it may be difficult for him to pay $150,000.00 in a single lump sum and gave him the option to pay over time.

It is well-settled that the trial court has broad discretionary powers in the just and reasonable division of marital property. *See Fobar*, 771 N.E.2d at 59. Guidance for the trial court's decision is found in Indiana Code section 31-15-7-4(b) (1997), which provides:

> The court shall divide the property in a just and reasonable manner by:
>
> > (1) division of the property in kind;
> >
> > (2) setting the property or parts of the property over to one (1) of the spouses and requiring either spouse to pay an amount, either in gross or in installments, that is just and proper;
> >
> > (3) ordering the sale of the property under such conditions as the court prescribes and dividing the proceeds of the sale; or
> >
> > (4) ordering the distribution of benefits described in IC 31-9-2-98(b)(2) or IC 31-9-2-98(b)(3) that are payable after the dissolution of marriage, by setting aside to either of the parties a percentage of those payments either by assignment or in kind at the time of receipt.

Subsection 2 of this statute allows the trial court to divide the marital property by awarding physical assets to one of the spouses and a money award representing a portion of those physical assets to the other spouse. The trial court has the discretion to divide the property in this way even when the party receiving the noncash property must liquidate a portion of that property in order to pay the monthly installments of the cash

7

award to the former spouse. *Neffle v. Neffle*, 483 N.E.2d 767, 769 (Ind. Ct. App. 1985), *trans. denied*.

Further, we are mindful that the trial court's disposition is to be considered as a whole, not item by item. *Fobar*, 771 N.E.2d at 59. In fashioning a just and reasonable property distribution, a trial court is required to balance several different considerations, including the allocation of items of property or debt based upon the disposition of other items, as well as factors identified by statute as permitting an unequal division. *Id.* at 60. Consequently, on appeal, we cannot view these items in isolation as it may upset the balance struck by the trial court. *Id.*

Here, James requested and received the farm land whose value had appreciated $300,000.00 since he had acquired it, and the trial court correctly determined that Vicki is entitled to 50% of this appreciation. Before the equalization payment, the trial court had awarded James marital assets with a total value of $993,487.86, including the $619,500.00 in unencumbered farm land, and had awarded Vicki marital assets with a value of $305,322.70. Based upon the division of the parties' assets, an equalization payment was necessary to achieve the 65/35 split determined by the trial court.

The evidence showed and the trial court found that James' current weekly farm rental income is $292.50. Thus, James' monthly farm rental income is $1,267.50. Rather than requiring James to sell all or part of the farm land or to obtain a mortgage on the land, the trial court ordered payments according to an amortization schedule. Pursuant to the court's order and amortization schedule, the first payment to Vicki was due April

8

2013 in the amount of $1,000.00. From there, the monthly payments decrease in amount until March 2028 when a balloon payment is due for the balance of the equalization payment. Therefore, rather than contradicting the court's findings that James' weekly income is dependent upon his keeping possession of the farm land and that selling the land or obtaining a mortgage to make the equalization payment would cause his expenses to exceed his income, the ordering of these payments supports the goal of James keeping possession of the farm land. Moreover, the payment amount on the court's amortization schedule never exceeds or even equals James' monthly income from the rental of the farm land, and the payment amount decreases each month so that James is able to make manageable payments for fifteen years before the balloon payment is due. The trial court acted within its discretion in ordering James to pay Vicki an equalization payment over time, and it did not contradict its findings by doing so.

CONCLUSION

For the reasons stated, we conclude that the trial court acted within its discretion when it divided the parties' marital assets and when it ordered James to pay Vicki an equalization payment over time. Further, the trial court's order did not contradict its findings.

Affirmed.

ROBB, C.J., and BRADFORD, J., concur.

9